**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-18-01654-001-PHX-DWL |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Michael Garcia Vasquez, | |
| Defendant. | |

Pending before the Court is Defendant Michael Garcia Vasquez's ("Vasquez") motion for compassionate release (Doc. 54), which the government opposes (Doc. 56). For the following reasons, the motion is denied.[1]

## RELEVANT BACKGROUND

A. <u>Underlying Crime</u>

In August 2019, Vasquez was convicted (via guilty plea) of the crime of being a felon in possession of a firearm and sentenced to 46 months in prison. (Doc. 52.)

As background, Vasquez has an extensive criminal record that includes the following convictions: (1) a felony conviction for a second-degree burglary committed in October 1994 (Doc. 49 ¶ 36); (2) a felony conviction for a second-degree burglary committed in August 1994 (*id.* ¶ 37); (3) a misdemeanor conviction for an assault committed in March 2000 (*id.* ¶ 39); (4) a misdemeanor conviction for assault and drug offenses committed in July 2000 (*id.* ¶ 40); (5) a felony conviction (resisting arrest) for an

---

[1]   Vasquez requested oral argument, but this request will be denied because the issues are fully briefed and oral argument will not aid the Court's decision.

episode in September 2000 in which Vasquez "resisted arrest and punched the two officers repeatedly," continuing to "struggle and kick even after he was restrained and placed in the patrol car" and causing one of the officers to sustain a scratch on his eye and a bump on his forehead (*id.* ¶ 41); (6) a felony conviction for a car theft committed in December 2002, in which Vasquez fled from law enforcement after apprehension (*id.* ¶ 43); (7) a felony conviction for a car theft committed in February 2003, in which Vasquez fled from law enforcement, told officers that he had a gun, had to be subdued with a Taser, and caused one of the officers to sustain a back injury (*id.* ¶ 44); (8) a felony conviction for drug trafficking that occurred in August 2002 (*id.* ¶ 45); (9) a felony conviction for a car theft committed in October 2003 (*id.* ¶ 46); and (10) a felony conviction for a weapons-related offense committed in March 2015, arising from an episode in which a parole officer conducting a search of Vasquez's home found, among other things, "a loaded 9mm handgun in a night stand in the defendant's bedroom," "a Glock 17 9mm handgun with a sixteen-round magazine filled with ammunition," "a Sig 9mm handgun with full magazine," "a Ruger 9mm handgun with full magazine," "a black and brown AK47 with two full magazines," "a black Lorcin.25 caliber handgun," and "a black AR15 .223 caliber rifle" (*id.* ¶ 47). During the parole search, "[l]aw enforcement also found prison letters from documented members of the Mexican Mafia which law enforcement interpreted as directing the defendant to tax narcotics sellers in the area." (*Id.* ¶ 8.)

In October 2018, Vasquez was out of custody and living in an area of El Mirage, Arizona where ATF agents believed that "criminal street gang members [were] involved in criminal activity, including the sale of narcotic drugs." (*Id.* ¶ 6.) During the course of their investigation, agents came to suspect that Vasquez was selling drugs. (*Id.* ¶¶ 9-14.) Agents eventually obtained search warrants for Vasquez's home, and the resulting search (conducted in December 2018) resulted in the seizure of, among other things, a loaded "Smith & Wesson pistol . . . in the top dresser drawer on the right side of the bed where agents found [Vasquez's] wallet," assorted types and quantities of ammunition, a small quantity of marijuana, a digital scale, "14 blue tablets marked 'M-30' found in a cubby

organizer located on top of the dresser on the right side of the bed, "two additional tablets marked 'M-30' found in a plastic bag found inside a men's work boot," and two metal pill grinders. (*Id.* ¶ 15.)

Vasquez was indicted on drug and firearms charges. (Doc. 5.) Although the government agreed, as part of the plea agreement, to dismiss the drug-related charges (Doc. 52), it argued at sentencing that Vasquez's offense level should be increased because he committed the firearms offense in furtherance of drug trafficking activity. (Doc. 60 at 17-21.) Vasquez objected, arguing that "[a]ll the controlled substances recovered in the December 6, 2018 search of Mr. Vasquez's home—a small amount of cannabis and 16 pills that appeared to be Percocet but were found to contain fentanyl—were for his personal use, not for distribution." (Doc. 33 at 11 [written objection]. *See also* Doc. 60 at 4-17 [transcript of sentencing hearing].) The Court ultimately overruled Vasquez's objection, concluding that although "[t]his is not the strongest case in the world for whether the firearm was possessed or used in furtherance of another felony, . . . I do think that it just meets the preponderance standard here" because, *inter alia*, "an agent swore under penalty of perjury to a judge that various confidential informants were reporting drug trafficking activity at the defendant's house" and "there's just not a legitimate explanation for why . . . somebody would have a [digital] scale in their house. That is part and parcel of a drug trafficker's arsenal of tools." (Doc. 60 at 26-27.)

B.    <u>Compassionate Release Request</u>

According to the Bureau of Prisons' ("BOP") inmate locator website, Vasquez's projected release date is March 13, 2022.

On March 31, 2020, Vasquez submitted a compassionate release request to the warden at FCI Phoenix. (Doc. 54 at 7.) This request was denied. (*Id.*)

On December 22, 2020, Vasquez filed (through counsel) a motion for compassionate release with this Court. (Doc. 54.) The motion asserts that, as of September 29, 2020, Vasquez was 5'5" tall and weighed 182 pounds, which results in a body mass index ("BMI") of 29.4 that is considered "borderline-obese." (*Id.* at 7-8.)

On January 4, 2021, Vasquez filed a supplement to his motion. (Doc. 55.) The supplement reports that Vasquez contracted COVID-19 at some point in December 2020. (*Id.*)

On January 5, 2021, the government responded to Vasquez's motion. (Doc. 56.)

On January 13, 2021, Vasquez filed a reply. (Doc. 58.) Among other things, the reply states that Vasquez's BMI as of September 29, 2020 was actually 30.3, not 29.4, which places him in the "obese" category. (*Id.* at 2.) The reply also states that, although Vasquez "is feeling somewhat better than he felt during the most acute time of his [COVID-19] infection, he continues to have lingering symptoms, including fatigue, shortness of breath, and headaches." (*Id.* at 4.)

**DISCUSSION**

I. <u>Legal Standard</u>

"The statute authorizing compassionate release as it exists today was first enacted as part of the Comprehensive Crime Control Act of 1984." *United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020). "That original statute, unlike the current law, gave BOP exclusive power over all avenues of compassionate release. For over 30 years any motion for compassionate release had to be made by the BOP Director." *Id.*

This statutory framework changed in 2018, when Congress passed the First Step Act. *Id.* at 233. Among other things, the First Step Act removed "the BOP as the sole arbiter of compassionate release motions." *Id.* Now, although the "BOP is still given the first opportunity to decide a compassionate release motion, and may still bring a motion on a defendant's behalf, under Congress' mandate a defendant now has recourse if BOP either declines to support or fails to act on that defendant's motion." *Id.*

The standards for evaluating a compassionate release motion are set forth at 18 U.S.C. § 3582(c)(1)(A). Among other things, the court "may" grant a compassionate release motion and reduce a defendant's term of imprisonment if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the court finds that "extraordinary and compelling reasons warrant such a reduction" and that "such a

reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(i). The applicable policy statement, in turn, is found at USSG § 1B1.13. It provides that the court may reduce the term of imprisonment if three conditions are met: (1) "extraordinary and compelling reasons warrant the reduction"; (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) "the reduction is consistent with this policy statement." *Id.*

II. Analysis

A threshold question presented by Vasquez's motion is whether Vasquez has demonstrated the existence of the sort of "extraordinary and compelling reasons" that are a prerequisite to relief. Because Vasquez appeared to concede in his motion that his BMI is too low to qualify as "obese" under CDC guidelines (and because Vasquez identified no other health condition that might render him particularly vulnerable to COVID-19), the government argued in its response that Vasquez is statutorily ineligible for relief. (Doc. 56 at 1-2, 6-7.) But in his reply, Vasquez clarified that his motion contained a mathematical error and that his BMI, properly calculated, is just high enough to qualify as "obese." (Doc. 58 at 2.) Additionally, after filing his motion, Vasquez submitted supplemental material establishing that he contracted COVID-19 in December 2020. (Doc. 55.) Based on these clarifications and submissions, the Court concludes that Vasquez is potentially eligible for relief.

Nevertheless, the Court concludes, in its discretion, that Vasquez's motion should be denied. As noted, § 3582(c)(1)(A) requires the Court to consider the "applicable policy statements issued by the Sentencing Commission," and one of the considerations specified in the relevant policy statement, USSG § 1B1.13, is whether the defendant poses a danger to the safety of the community. Vasquez has not met his burden of demonstrating the absence of such danger. Vasquez has a horrific criminal record stretching back 25 years that includes assaults, burglaries, car thefts, drug offenses, weapons offenses involving veritable arsenals, and at least two instances where Vasquez caused law enforcement agents

to suffer injuries.  The Court does not understand Vasquez's assertion that, although he "has a considerable prior criminal history . . . it is also notable that his priors do not involve assaultive conduct." (Doc. 54 at 5.)[2]  As discussed, Vasquez's history is filled with assaults and violence.  Although the Court sincerely appreciates Vasquez's stated desire to change his life after he finishes his prison term, this is not an appropriate case for compassionate release.

Accordingly, **IT IS ORDERED** that Vasquez's motion for compassionate release (Doc. 54) is **denied**.

Dated this 22nd day of January, 2021.

Dominic W. Lanza
United States District Judge

---

[2] *See also* Doc. 54 at 11 ("Mr. Vasquez's prior criminal history is nonviolent and almost entirely related to his history of substance abuse and addiction.").